### Robinson et al. v. Higgins.

Oct. 15, 1943.

Robert L. Page for appellants.

J. Walter Clements for appellee.

Opinion of the Court by Stanley, Commissioner—Affirming.

In this suit for damages for personal injuries by a guest against her hosts, caused by their negligence in driving an automobile, the trial court instructed the jury that the law was for the plaintiff and submitted only the issue of damages. The verdict and judgment were for $4,182.50, of which $1,382.50 was probably for special damages. The appellants, Roy B. Robinson and his wife, Doris K. Robinson, contend that they were entitled to a peremptory instruction, or, in any event, to the submission of the question of contributory negligence of the plaintiff, Florence Higgins.

On July 4, 1941, the three parties named and Joseph Pearl drove in Robinson's automobile from Louisville to Bardstown and then to Lexington. They spent the evening at a pleasure resort near Lexington and started to their homes about midnight. Robinson had been driving during the day, but when the party started on the return trip Pearl drove a few miles to Lexington and then turned the car over to Mrs. Robinson, because he was sleepy and tired, having worked most of the previous night. Miss Higgins and Robinson were riding in the back, the latter napping, as was possibly Miss Higgins. At Versailles the street they were traveling, Lexington Avenue, crosses Main Street at right angles and ends 144 feet from it. The Methodist Church is located there, causing an apparent cul-de-sac or dead end to Lexington Avenue. Right at the end there is a street leading to the left around the court house, but no street to the right. To proceed to Louisville it is necessary that one turn right at the intersection of Lexington Avenue and Main Street. The corner is well marked with signs and Mrs. Robinson was familiar with the road. At the time of the accident the green and red signal light at the corner was not operating and the street lamps were not lighted. Mrs. Robinson testified she was watching for the corner to make the turn but somehow missed it and drove ahead. When she got within a few feet of the building it suddenly loomed up before her and she became frantic and screamed and ran into it. Miss Higgins was severely injured. Mrs. Robinson testified: "After I had already passed the street, I just looked up and I saw this church. There is a road to the left there by the church I could go around, but I did not know the road was there, and you absolutely can't see it until you get right up on it, and by the time I did get there, I was panicky. I don't know whether I lost control—I don't know what I did. I did realize if I went on and tried to make a sharp turn, I would probably turn over. If I went on and tried to go to the right of the church, I would probably go down the hill. I don't know whether it was my subconscious mind or not that told me it was either hit the church or go down in the ditch. * * * I did not see it until I got just right up on it, because I realized then I had passed the street I was supposed to turn. I did not know just where I was then."

Mrs. Robinson testified she had been driving 35 or 40 miles an hour until she came into the city and then slowed

down and looked for the signs and turn in the street. She also dimmed the lights, as was her custom when driving when in cities. They revealed objects only 75 to 100 feet away. She could not say how fast she was driving when she hit the church. She was tired from the day's outing, but did not say that she was drowsy or sleepy. The plaintiff and the other occupants were apparently dozing, for none of them took notice or realized the situation until immediately before the accident.

The appellants say the case was decided under the rule of res ipsa loquitur and the court was of opinion that the defendants had failed to prove they were not negligent. It is contended that the effect of the rule of res ipsa loquitur is merely to permit the jury to infer negligence and that it does not authorize the judge to decide there was negligence as a matter of law. In two recent cases we have held that where the facts of the accident are such that no reasonable person could conclude that it did not result from negligence of the driver of an automobile, and there is no evidence of the intervention of some outside agency, it is proper to direct a verdict for the plaintiff. Ralston v. Dossey, 289 Ky. 40, 157 S. W. (2d) 739; Droppelman v. Willingham, 293 Ky. 614, 169 S. W. (2d) 811. An earlier case of the same class, in which the driver could not make a turn in the road, is Chambers v. Hawkins, 233 Ky. 211, 25 S. W. (2d) 363, 364, in which we said, "The fact itself proclaims negligence."

In the first case the driver abruptly cut his car to the left to pass another, ran off the surface of the road and then cut it sharply to the right, endeavoring to get back on the paved surface, and the car turned over and injured a guest. In the second case the driver undertook to turn into another street or road and the car left the road and ran into a tree. As in the Chambers and Droppelman cases, the instant one is not strictly dependent upon the rule of res ipsa loquitur, for the evidence of the defendant, Mrs. Robinson (who was her husband's agent), instead of excusing or exculpating the act, shows negligence in addition to the mere fact of the occurrence. The speed of the car is not definitely shown, it being only that it was slower than 35 or 45 miles an hour, and this warranted the inference that it was unreasonable driving in the built up portion of the city. Section 2739g-51, Kentucky Statutes Supp. 1939. The lights

were· dimmed and did not "reveal clearly substantial objects at least 350 feet ahead." Section 2739g-24, Kentucky Statutes Supp. 1939. The driver testified she became "panicky" and did not know what she did. Certainly she did not stop or endeavor to stop before striking the building. It is also apparent that had proper lookout been maintained and control and operation of the car been observed, the large building immediately ahead would have been seen in time and the car stopped or safely turned into the street on the left. In the ordinary and common experiences one does not run into an obstruction like a building at the end of the street if he is observing the duties incumbent upon the driver of an automobile. Only one legitimate inference, therefore, can be drawn from all these facts, that is, that the driver was negligent, so it was proper to instruct the jury that they should find for the plaintiff whatever damages the jury believed had been proved.

We have the further contention of the appellants that there was no proof of the driver's negligence because she was suddenly confronted with an emergency and it cannot be said as a matter of law that she did not do what the ordinarily prudent and careful person would have done under the circumstances, or adopted the best method to avoid the accident. We do not think the rule applicable to emergency situations fits this case. The emergency was not created by the negligence or even the act of any other person or agency, such, for example, as a train suddenly appearing on a railroad crossing or an individual darting out in the street in the path of an automobile. The condition or emergency was created exclusively by the driver of this car. The building had been there a long time and did not itself create the emergency. Bybee Bros. v. Imes, 288 Ky. 1, 155 S. W. (2d) 492. As was recently said in Rabold v. Gonyer, 285 Ky. 618, 148 S. W. (2d) 728, 731: "A driver may not by his own negligence create an emergency and then be excused from liability for damage caused by his actions in seeking to avoid the emergency."

The evidence did not warrant a submission of the question of the plaintiff's contributory negligence because of having ridden with a driver whom she knew to be tired and sleepy. There was none tending to prove that Mrs. Robinson was incapacitated, partially or completely, in this respect. Southern Oxygen Co. v. Martin,.

291 Ky. 238, 163 S. W. (2d) 459. Nor was there any negligence on the plaintiff's part in failing to see the building and warn the driver of its presence. Chambers v. Hawkins, supra; Haller's Pet Shop v. Pearlman, 253 Ky. 130, 69 S. W. (2d) 9.

Wherefore, the judgment is affirmed.