# Ewing-Von Allmen Dairy Co.
## v. Godwin (two cases).

January 28, 1947.

Rehearing denied March 28, 1947.

B. H. Farnsley, Judge.

Doolan, Helm, Stites & Wood for appellant.

Wm. S. Heidenberg and Roscoe C. Searcy for appellees.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

At the end of a consolidated trial before jury, Fred Godwin, appellee, recovered judgment for $3653.95 for his personal injuries, lost time and expenses, all caused by automobile accident, while his wife, Bessie Godwin, appellee, recovered judgment for $4000 for her own personal injuries caused by the same accident. Both judgments were rendered against Ewing-Von Allmen Dairy Company, appellant, which thereafter perfected this consolidated appeal.

Appellant now contends that the judgments should be reversed because (1) the trial court committed error in refusing to discharge the jury panel at the conclusion of the voir dire examination and because (2) the trial court committed error in refusing to discharge the jury following improper arguments to the jury by counsel for appellees and because (3) the damages awarded to appellees were and are excessive.

Since this court has reached the conclusion that the judgments of the trial court must be reversed on the

ground of appellant's first complaint, there now appears to be no reason for a complete recital of all the happenings of this accident. For the same reason, our discussion herein will be practically limited to the first error mentioned above. Any other trial errors, either real or fancied, are not deemed likely to recur upon a second trial and consequently need not be considered on the present appeal.

Upon this trial's voir dire examination, or the preliminary investigation of the qualifications of prospective jurors, counsel for appellees specifically asked three separate jury prospects, in three separate instances, each time in the presence of the entire panel from which the jury was eventually chosen, questions which definitely mentioned automobile liability insurance. Whereupon, the appellant made motion to discharge the jury panel and to reassign the cases for trial. This motion was overruled. No admonition was given to the jury. The appellant excepted to this ruling of the court, and now the question of the propriety of permitting knowledge of auto liability insurance to permeate to a trial jury in the manner employed on this trial is presented to us on this appeal.

Where counsel for a party in court has information that the opposing party has indemnity insurance and has further information that some member of the jury panel is interested in the carrier of such indemnity insurance and where such counsel then acts in good faith, his questions to prospective jurors on voir dire examination on the insurance subject may be considered proper. Such questions, under these conditions, may be regarded as a valid method of elucidating the truth, that is the truth about prospective juror, John Doe, really having in the opposing party's insurance carrier the interest which John Doe has been reported, in all good faith, to possess. See the case of Duncan Coal Co. v. Thompson's Adm'r, 157 Ky. 304, 162 S. W. 1139, 1140. This Duncan Coal Company case is one of the original and leading Kentucky cases on this subject. Its general principle has been followed in several later cases.

Now in the instant case, counsel for appellees do not claim to have had any information whatever to the effect that some member of the jury panel had an inter-

est in some specific insurance carrier indemnifying the appellant. No definite insurance company was even mentioned in the interrogation. No particular interest of any particular person in any particular indemnity company was set forth in any of the questions propounded. All of this means that there is a lack of evidence of the good faith element which was so necessary as a justification for the voir dire questions propounded on this trial.

It cannot be said that inadvertence is the explanation for the injection of the insurance angle into this trial. The double repetition—three occurrences in short interval—refute the practical possibility that the insurance injection of these cases was an accident, an unintentional mishap of a busy trial. The emphasis and re-emphasis of appellant's insurance carriage constituted an unfair factor in this trial. Such a factor should have been eliminated.

In the Duncan Coal Company case, supra, we find the following language in pursuit of this very subject:

"This privilege (that of interrogating prospective jurors on voir dire in relation to their interest in the indemnity carrier of the opposing party), however, is not only liable to abuse, but is frequently abused. While the question is asked ostensibly for the purpose of determining the bias or interest of the juror, in a great majority of cases the sole purpose of such a question is to bring to the attention of the jurors the fact that any verdict they may render will impose no liability on the defendant, but will be paid by some one else. No argument is necessary to show how prejudicial it is to the defendant to call the attention of the jury to this fact. A doubtful case may turn on the point that the real defendant will not suffer by the verdict. Cases should be tried on their merits. If plaintiff have a meritorious case, he should win. He should not win merely because some one other than the defendant will have to bear the loss. In view of the constant abuse of the privilege in question, we conclude that the question should never be asked, unless asked in good faith, and the good faith of plaintiff's counsel will depend on whether or not he has reasonable grounds to believe that defendant carries indemnity insurance, and that one or more of the jurors are in some way interested in the insurance company. If

the question be asked, and the trial court entertains any doubt as to the good faith of plaintiff's counsel in asking the question, the court should, if asked, discharge the panel at plaintiff's cost.''

No one can accurately state whether or not the outcome of this trial was influenced by the information which the voir dire examination transmitted to the jury. The only observation we may now make is that these appellees were treated liberally, having been awarded total damages amounting to $7653.95. Yet neither of them had any broken bones nor any hospitalization treatment beyond the first aid administrations. The evidence showing any permanent impairment to either of the appellees is somewhat meager. However, as we indicated at the outset, we are not now deciding the question of whether or not the damages awarded were excessive.

For the reason herein indicated, the judgments of the trial court are hereby reversed for further proceedings consistent with the pronouncements of this opinion.