Frank C. WHEELER, Appellant,

v.

Lila CHADWELL, Appellee.

George BAILEY, Appellant,

v.

Lila CHADWELL, Appellee.

Court of Appeals of Kentucky.

March 3, 1961.

R. C. Littleton, Grayson, G. B. Johnson, Jr., Ashland, Dysard, Dysard & Johnson, Ashland, D. O. Welch, Ashland, for George Bailey.

C. Guthrie Yager, Harry F. Riddle, Ashland, W. H. Counts, Olive Hill, James D. Atkinson, Greenup, for Frank C. Wheeler.

Thomas D. Theobald, Grayson, for appellee.

MONTGOMERY, Judge.

Lila Chadwell recovered judgments of $4,000 each against Frank C. Wheeler and George Bailey for damages arising from a collision involving their respective trucks. The cross-claims of Wheeler and Bailey against each other were dismissed. The appeals of Wheeler and Bailey have been considered together.

Wheeler contends that: (1) He was entitled to a sudden emergency instruction; (2) appellee was not entitled to an instruction authorizing damages for loss of use of her truck; and (3) the damages are excessive. Bailey opposes the first contention and also urges that the damages are excessive.

The accident occurred on Kentucky Highway 7, a two-lane blacktop road, on August 18, 1956. The weather was sunny and dry. The road was clear and straight. There was a ditch and rock cliff on Chadwell's side of the road at and near the place of collision. There was an embankment about fifteen feet deep and a creek on the other side of the road.

Just prior to the collision, the Bailey truck had been following the Chadwell truck for about two miles. They were traveling south. After they came out of a curve, the Bailey truck started to pass the Chadwell truck. Both trucks had been traveling

at a speed of about 35 miles per hour. As the Bailey truck was trying to pass the Chadwell truck, Chadwell observed the Wheeler truck coming out of a curve traveling north toward the Bailey and Chadwell trucks.

Appellant Wheeler argues that he was entitled to a sudden emergency instruction because of the situation presented by the Bailey truck attempting to pass the Chadwell truck. Chadwell said that the Wheeler truck was coming "fast" but gave no estimate as to the rate of speed. Bailey did not testify on that point. Wheeler's driver said that his truck was traveling between 40 and 45 miles per hour. He said that after he first saw the other trucks the Wheeler truck traveled about 300 feet before it collided with them in the attempt to go between them. The Chadwell truck had been driven as far to its right as possible into the ditch against the cliff. Bailey had attempted to avoid collision with the Wheeler truck by driving his (Bailey's) truck to its left. It is conceded that the operation of the Chadwell truck was free from negligence.

When confronted with the unexpected crisis, the driver of the Wheeler truck applied his brakes and attempted to drive between the other two trucks. He chose this course, he said, in preference to a head-on collision with the Bailey truck which occupied his lane or to going over the embankment or into the cliff. The driver of the Wheeler truck was unable to say how far beyond the place of collision the other trucks were when he first saw them. Chadwell said that the Wheeler truck was 400 feet away when he first saw it.

Despite his insistence that he had control over his truck, the driver of the Wheeler truck said that his load had shifted and that the truck "rocked that way, back and forth on the road, about twice," "but I couldn't keep it from doing it." Chadwell said that the Wheeler truck was out of control. He said: "It swerved this way and back this way and the wheels came up, the wheels raised up, and when they raised up on their side and started cutting, and he started at an angle, and come scooting. * * * His black mark looked liked it scooted about 150 feet. * * * it slid right down the road."

The Wheeler truck struck the Chadwell truck "so hard it tore the rear out from under it." The Chadwell truck was demolished by the impact. The Bailey truck also was greatly damaged.

■ Despite the statement of Wheeler's driver that he had his truck under control, it is obvious from his own statement and other testimony that he did not. The distance the Wheeler truck had traveled with its brakes on, the impact with which it struck and demolished two trucks, the skid marks on the highway, and the action of its wheels all indicate the great speed of the loaded truck and the failure of its driver to have it under control. Since there was little contrariety in the testimony other than the statement of Wheeler's driver as to his control over the vehicle, the undisputed and physical facts show that he was guilty of negligence in failing to keep his vehicle under reasonable control.

The rule in such cases is that one whose negligence creates or causes an emergency is not entitled to a sudden emergency instruction. McGraw v. Ayers, 248 Ky. 166, 58 S.W.2d 378; Lyons v. Southeastern Greyhound Lines, 282 Ky. 106, 137 S.W.2d 1107; Rabold v. Gonyer, 285 Ky. 618, 148 S.W.2d 728; Robinson v. Higgins, 295 Ky. 446, 174 S.W.2d 687. The driver of Wheeler's truck was guilty of negligence. The sudden emergency instruction was properly refused.

■ Appellants complain that there was no evidence on which to base an instruction authorizing a recovery for the loss of use of appellee's truck for business purposes. The point made is that appellee is not the real party in interest and not entitled to recover for loss of use. CR 17.01;

The truck was operated by appellee's husband under various hauling contracts. He testified concerning their nature and their execution. The only evidence to justify the instruction was given by the husband as follows:

"Q. 4—I believe you and your wife are in business together and the truck is in her name? A. That's right."

Appellee, when called as if upon cross-examination, testified that her husband took care of the contracts. Neither was asked further concerning the nature or details of the business arrangement between them. Their testimony is sufficient to establish that appellee owned the truck involved, that the husband and wife were in business together, and that the truck was being used in that business. The instruction was justified by this evidence.

The jury awarded a lump sum of $8,000 for damage to the truck and for its loss of use. The Chadwell truck was a 1952 GMC tandem diesel 5-ton dump truck known as a "ten-wheeler," weighing 13,950 pounds and capable of hauling twenty tons of fire clay. Appellee had purchased the truck with dump bed new at a cost of $10,800 in 1952. It had been completely overhauled shortly before the collision. There was evidence for the appellee that it was worth "around $7,000" before the collision and had a salvage value of $350 afterward. There was other testimony to corroborate this evidence. Appellants introduced testimony in rebuttal and also sought to show that such a truck would have depreciated 60 per cent in value.

The evidence for the appellee shows that the truck was in use six days of the week, that the reasonable rental value of a replacement truck was $10 to $12 per hour, and that it was necessary to expend $3,000 to $4,000 for extra truck hire because of the loss of use of the truck. These statements were undisputed. Appellants argue that appellee owned another truck which could have been used as a substitute for the damaged truck, thus eliminating the rental costs.

The jury accepted appellee's evidence as the basis for its award of damages. It was sufficient to sustain the verdict. The lump sum was not apportioned so that it can be determined how much was for truck damage and how much for loss of use. The best that can be said is that the jury rejected appellants' testimony on the issue of damages or that there was no evidence to rebut appellee's proof. The damages are not excessive.

Judgment affirmed.

MOREMEN and PALMORE, JJ., dissent because they feel that appellant Wheeler was entitled to a sudden emergency instruction.