PLANTERS BANK & TRUST COMPANY OF HOPKINSVILLE, Kentucky, etc., et al., Appellants,

v.

Glendel Ray DEASON et al., Appellees.

Court of Appeals of Kentucky.

Dec. 12, 1975.

John P. Kirkham, Keith, Scent, Kirkham & Walton, Hopkinsville, for appellants.

Wendell H. Rorie, Hopkinsville, for appellees.

VANCE, Commissioner.

This is an appeal from a judgment entered pursuant to a directed verdict which dismissed appellant's claim against the appellee Glendel Ray Deason. A summary judgment which disposed of a third-party claim against appellee J. Robert Meece is not challenged by either party.

The two and one-half year old daughter of Gary and Tralucia Chastain was struck and killed by an automobile operated by the appellee Glendel Ray Deason. The accident occurred upon the driveway and parking area of a Dairy Queen Drive-In Restaurant in Hopkinsville, Kentucky, at approximately 6:30 p. m., October 27, 1970.

The Dairy Queen Restaurant fronts to the east upon U.S. Highway 41–A, a north-south highway. The building is approximately sixty feet from front to back. A sidewalk runs from the front to the back on the north side of the building and a customers' entrance is located near the front of the building on the north side. A drinking fountain is located on the north side approximately thirty feet west (toward the rear) of the entrance.

The restaurant is located near the center of a paved lot 100 feet wide and approximately 360 feet deep. Parking spaces are marked on the pavement surface at the front and on both the northern and southern extremes of the lot in such a manner that the space between the building and the parked cars is utilized as a driveway on which vehicles are able to drive completely around the restaurant. The distance from the sidewalk on the north side of the building to the north edge of the parking lot is 39 feet. The area is well lighted.

Mr. and Mrs. Chastain were traveling through Hopkinsville to Nashville in separate cars. When they stopped at the Dairy Queen to eat they parked their cars angled toward the northwest in the parking spaces on the north side of the parking lot just opposite the entranceway. As they left the restaurant Mr. Chastain and the little girl proceeded across the driving area and went between the parked cars. Mrs. Chastain went down the sidewalk to the drinking fountain to wet a napkin to clean the child's face.

Mr. Chastain asked his daughter if she wanted to ride the rest of the way with him or with her mother. She answered "Mommy" and proceeded to run from between the parked cars at an angle across the driveway toward Mrs. Chastain who was then at the fountain. In doing so she ran into the path of appellee's car which had entered the Dairy Queen lot from Highway 41–A and was proceeding at a speed of 5 to 10 miles per hour around the building to a drive-in window on the other side.

Appellee said the area around the restaurant was a congested area; that he knew that young people and children were frequent patrons of the business; that he was carefully watching where he was driving; that the little girl ran from a place of concealment into the front of his car and that he did not see her, her father or her mother before the accident.

Mr. Chastain testified that when his daughter ran from between the cars he grabbed at her and ran after her two or three steps before she was struck by the car. Mrs. Chastain testified that appellee had his head turned ninety degrees to his left and was looking toward the Dairy Queen when the accident occurred. A police officer who immediately was called to the scene testified that appellee stated he was looking into the Dairy Queen at the time of the accident.

■ The principal issue is whether the evidence of negligence on the part of appellee was sufficient to take the case to the jury. The accident occurred on private property in a congested area known by the appellee to be frequented by young people and children. *Worrix v. Rowe,* Ky., 428 S.W.2d 187 (1968), and *Louisville Taxicab & Transfer Co. v. Warren,* 305 Ky. 861, 205 S.W.2d 695 (1947), are not applicable because a question of fact exists as to whether appellee was keeping a proper lookout in the operation of his vehicle and if not, could he, by the exercise of ordinary care, have seen the child and managed to avoid the injury.

The child had run across the driveway to a point approximately nine feet from the sidewalk on the north side of the restaurant when struck. The right front and right rear wheels both passed over the child.

We think a jury could reasonably find from the testimony that the appellee was not watching where he was driving but had he done so he could have seen the child in time to have avoided striking her. The distance the child ran across the driveway in front of the car before being struck would permit an inference that appellee had time to avoid the accident had he kept a proper lookout. The directed verdict for appellee was erroneous.

■ A witness who saw the accident was permitted to express an opinion that appellee stopped his car as soon as he could. On a new trial this testimony should be excluded. *Goins v. Slusher,* 282 Ky. 710, 140 S.W.2d 363 (1940).

■ Appellant further contends the trial court erred in refusing to permit his counsel upon voir dire to question prospective jurors whether they carried insurance with Farm Bureau Mutual Insurance Company. This contention is based upon the assumption that some of the jurors drawn from a rural area probably were so insured and had a financial interest in the case because rates and dividends are affected by the loss ratio of the company.

Appellant relies upon *Hoagland v. Dolan,* 259 Ky. 1, 81 S.W.2d 869 (1935) and *Ewing-Von Allmen Dairy Co. v. Godwin,* 304 Ky. 161, 200 S.W.2d 103 (1947). In those cases we recognized the propriety of such a question where counsel for plaintiff has information that the defendant has indemnity insurance, and that some member of the jury is interested in the insurance company, and the question is asked in good faith.

Our cases are uniform in condemning abuse of the voir dire as a subterfuge to inform jurors of liability insurance coverage. The only permissible use of the question is in a good faith effort to expose possible bias of a juror. Even if the possibility of higher rates or lower dividends determined by the loss ratio of the company be considered a sufficient interest upon which to infer bias on the part of a policy holder who serves as a juror, the bias would not ordinarily occur unless the juror had knowledge that the defendant was insured by his particular company.

There was no suggestion in this case that appellant in good faith believed that a prospective juror with an interest in Farm

Bureau Mutual Insurance Company knew that the defendant carried liability insurance with that company. It may be that in this day and age prospective jurors realize that liability insurance is the rule rather than the exception but the rule which requires exclusion from the jury of information relating to liability insurance coverage is a salutary one which should not be circumvented upon the showing made by appellant.

That part of the judgment which dismissed the claim against appellee J. Robert Meece is affirmed. That part of the judgment which dismissed the claim against appellee Glendel Ray Deason is reversed for further proceedings consistent with this opinion.

All concur except CLAYTON, J., not sitting.

As to the insurance issue REED, C. J., concurs in the result only.